IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TREMAINE EPPS, ) | |
| ) | Civil Action No. 2:16-cv-00135-MPK |
| Plaintiff, ) | |
| ) | Chief Magistrate Judge Maureen P. Kelly |
| ) | |
| v. ) | |
| ) | |
| ) | |
| ORLANDO HARPER, COUNTY OF ) | |
| ALLEGHENY, CORIZON HEALTH, INC., ) | |
| MICHAEL BARFIELD, and ADDITIONAL ) | |
| UNKNOWN DEFENDANTS, including an ) | |
| unidentified corrections officer and ) | |
| unidentified health care providers. ) | |
| ) | |
| Defendants. ) | |

BRIEF IN SUPPORT OF ALLEGHENY COUNTY
DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. Rule Civ. Pro. 12(b)(6), Defendants Orlando Harper and Allegheny County (hereinafter sometimes collectively referred to as the "County Defendants"), by and through their undersigned legal counsel, file this Brief in Support of Motion to Dismiss:

I. FACTUAL AND PROCEDURAL HISTORY

At all times relevant to the Complaint, Plaintiff Tremaine Epps (hereinafter "Plaintiff") was incarcerated at Allegheny County Jail (hereinafter "ACJ"). (ECF No. 1, ¶ 4). Plaintiff avers that, during the evening of February 3, 2014, his cellmate started "becoming aggressive." (Id. at ¶¶ 17-18). Plaintiff alleges that, because ACJ was on lockdown for the evening and he could not deescalate the situation by leaving his cell, he called out for help. (Id. at ¶¶ 18-19). "Subsequent to Plaintiff's plea for help, his cellmate attacked him and stomped on his ankle." (Id. at ¶ 21).

Following the altercation, ACJ correctional officers separated Plaintiff from his attacker and provided Plaintiff with a new cell and cellmate. (Id. at ¶ 22).

On February 4, 2014, "Plaintiff awoke in severe pain and was unable to walk." (Id. at ¶ 23). Plaintiff was transferred to the prison infirmary at which time an x-ray was taken of his left ankle. It was determined that Plaintiff had a fractured bone. At this time, the infirmary "placed Plaintiff in a splint, [and] provided him with crutches and medicine." (Id. at ¶ 24). Plaintiff informed the Corizon medical staff that he was still suffering from severe pain in his ankle and requested permission to stay in the infirmary. (Id. at ¶ 25). However, the Corizon medical staff denied his request, and cleared him to return to general population. (Id. at ¶ 26). For the next several weeks Plaintiff continued to have pain in his ankle, but all of Plaintiff's subsequent requests for additional medical treatment were denied. (Id. at ¶¶ 27-28). Despite routinely requesting medical attention, Plaintiff appears to concede that he did not fully utilize ACJ's established grievance system and did not exhaust his administrative remedies. (Id. at ¶¶ 30-31).

On February 19, 2014, Plaintiff sent a letter to Warden Harper alerting him that he required additional medical treatment for his fractured ankle. (Id. at ¶ 28). On February 26, 2014, Plaintiff was transferred to UPMC Mercy where he was treated by Lisa Blackrick, M.D. and Emily Sturgill, M.D. (Id. at ¶ 29). Surgery was performed on Plaintiff's ankle which had to be broken a second time so that it could heal correctly. (Id. at ¶ 32). Plaintiff does not complain about the adequacy of his medical care at ACJ after the aforementioned operation.

On February 2, 2016, Plaintiff initiated this 42 U.S.C. § 1983 civil rights lawsuit by filing a Complaint against the above-captioned Defendants in the United States District Court for the Western District of Pennsylvania. (ECF No. 1). The County Defendants now timely file their Motion to Dismiss Plaintiff's Complaint.

2

## II.     STANDARD FOR MOTION TO DISMISS

For a complaint to withstand a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), it must provide sufficient facts that, if presumed to be true, support "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 673 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). For a claim to qualify as "plausible," the alleged facts must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. The Third Circuit Court of Appeals has elaborated on the pleading standard set forth in Iqbal, providing the following test for determining the sustainability of complaints challenged under Rule 12(b)(6):

> [W]hen presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "*show*" such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) (emphasis added) (internal citations to Iqbal omitted).

## III.     ARGUMENT

### A.  Count I – Eighth Amendment Medical Claim Against County Defendants

Plaintiff has failed to plead sufficient facts demonstrating that the County Defendants were deliberately indifferent to his serious medical needs, and therefore Plaintiff has failed to state an Eighth Amendment medical claim against either of the County Defendants. More specifically,

Plaintiff concedes that he received medical treatment at the ACJ infirmary shortly after his cellmate attacked him (ECF No. 1, ¶ 24), and additional treatment at UPMC Mercy Hospital several weeks after the attack (Id. at ¶ 29), and therefore he cannot maintain an Eighth Amendment medical claim against non-medical defendants.

Regarding whether inadequate medical treatment from a correctional institution can violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment, the United States Supreme Court has said the following:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976) (internal citations omitted).  This sets a high pleading threshold for eighth amendment medical claims.

Additionally, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 n. 2 (3d Cir. 1979) (quoting Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)).  A prisoner's receipt of medical assistance from a prison's medical staff will typically prove to be fatal to any Eighth Amendment medical claim he or she may plead against the prison or its employees.  See Nock v. Taylor, 005 WL 1206844, at *2-3 (D.N.J. 2005) (dismissing an inmate's Eighth Amendment medical claim, which was premised on

allegations that prison medical officials failed to place her broken ankle in a cast for over two weeks, because she received some level of medical treatment).

Lastly, it is well established that non-medical prison staff are generally justified in believing that, when a prisoner with a serious medical need has been treated by prison medical staff, the prisoner has received adequate medical treatment and intervention on behalf of said prisoner is not necessary.  See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir.2004) (explaining that, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.").  This is true even when the prisoner has voiced his or her concerns about the quality of the medical treatment he or she has received from the medical staff.  The Third Circuit has previously held that non-medical jail staff cannot be found to be deliberately indifferent to a prisoner's medical needs simply because they received written medical complaints from the prisoner but took no responsive action.  Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (affirming the dismissal of an inmate's Eighth Amendment medical claim against the warden of Mid–State Correctional Facility despite the prisoner's uncontroverted averments that he had sent the warden multiple letters requesting additional medical assistance over a three month period of time).

Plaintiff does not allege that, at any time material to the Complaint, Defendant Orlando Harper was personally involved with providing medical assistance to Plaintiff for his fractured ankle.  (See ECF No. 1).  In fact, Plaintiff appears to concede that he never exhausted his administrative remedies under ACJ's grievance system.  (Id. at ¶¶ 30-31).  Had he done so, he would have been able to appeal the initial resolution of any of his written medical grievances to more senior jail officials, up to and including the warden.  Alerting the ACJ administration to his

medical grievances through the proper channels may or may not have resulted in him receiving additional medical relief. However, at the very least, it would have provided the County Defendants with actual notice of Plaintiff's concerns.

While Plaintiff does aver that he eventually sent a written letter to Defendant Orlando Harper on February 19, 2014, this occurred weeks after the Corizon medical staff had provided Plaintiff with a splint, crutches, and medicine. (Id. at ¶¶ 24, 28). As explained by the Third Circuit in Durmer v. O'Carroll, 991 F.2d at 69, a warden of correctional institution cannot be found to be deliberately indifferent to a prisoner's medical needs simply for ignoring a prisoner's written request for medical assistance when the prisoner has already been treated by medical staff. It should also be noted that approximately a week after Plaintiff sent Defendant Orlando Harper the letter requesting assistance, Plaintiff was transferred to UPMC Mercy Hospital for surgery on his ankle. (Id. at ¶ 32). As such, it is not clear from the factual allegations that Defendant Orlando Harper ignored Plaintiff's written request for additional medical assistance.

Based on the foregoing, Plaintiff's Eighth Amendment medical claim should be dismissed as to Defendants Orlando Harper and Allegheny County.

### B. Count III – Negligence Claim Against Defendant Orlando Harper

Defendant Orlando Harper, as the Warden of Allegheny County Jail, is entitled governmental immunity from state tort claims under the Pennsylvania Political Subdivision Tort Claims Act. Therefore, Plaintiff cannot maintain a negligence claim against Defendant Orlando Harper for allegedly failing to provide Plaintiff with adequate medical treatment while he was incarcerated at ACJ.

Under Pennsylvania's Political Subdivision Tort Claims Act (hereinafter "the PSTCA"), "no local agency shall be liable for any damages on account of any injury to a person . . . caused by any act of the local agency or an employee thereof" unless a statutory exception is applicable. 42 Pa. C.S. § 8541.  It is well established that a county is a local agency entitled to governmental immunity.  Balletta v. Spadoni, 47 A.3d 183, 195 (Pa. Cmwlth. 2012).  The Pennsylvania courts have held that all statutory exceptions within the PSTCA must be "narrowly construed." Jones v. City of Philadelphia, 893 A.2d 837, 843 n. 5 (Pa. Cmwlth. 2006) (citing Kiley v. City of Philadelphia, 645 A.2d 184 (Pa. 1994)).

Additionally, the statutory protection from state tort claims is not limited to the local agency itself.  Under the PSTCA, "[a]n employee of a local agency is liable for civil damages on account of any injury to a person . . . caused by acts of the employee which are within the scope of his office or duties *only to the same extent* as his employing local agency."  42 Pa. C.S. § 8545 (emphasis added).   While an employee may be found liable for acts which constitute "a crime, actual fraud, actual malice or willful misconduct," this exposure to suit clearly does not extend to negligent acts.  ."  42 Pa. C.S. § 8550.

As is correctly explained by the Complaint, Defendant Orlando Harper is the Warden of ACJ and "a county employee."  (ECF No. 1, ¶ 7).  A simple review of the PSTCA makes it clear that there is no statutory exception for personal injuries arising from a governmental agency's failure to timely provide adequate medical care.  See 42 Pa. C.S. § 8542(b) (identifying the eight statutory exceptions to the PTSCA).  Because Plaintiff's negligence claim is premised on factual averments that ACJ failed to provide him with sufficient medical care for his broken ankle (ECF No. 1, ¶ 50), Defendant Orlando Harper is entitled to governmental immunity under the PSTCA

and Plaintiff's state tort claim against Defendant Orlando Harper should be dismissed with prejudice.

### C. Count IV – Eighth Amendment Failure to Protect Claim Against County Defendants

*(i)   Plaintiff has failed to identify a policy or custom of Defendant Allegheny County which served as the proximate cause of his injuries and, therefore, Plaintiff has failed to set forth an Eighth Amendment failure-to-protect claim against Defendant Allegheny County.*

It is well established that a municipality cannot be held liable for the unconstitutional actions of its employees under the legal theories of vicarious liability and respondeat superior. See Natale v. Camden County Correctional Facility, 318 F.3d 575, 583 (3d Cir. 2003) (citing Monell v. Department of Social Services, 436 U.S. 658 (1978)).  To maintain a 42 U.S.C. § 1983 (hereinafter "Section 1983") claim against a municipality, a plaintiff "must demonstrate that the violation of his rights was caused by either a *policy* or a *custom* of the municipality." Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) (emphasis added).

"Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." McTernan v. City of York, PA, 564 F.3d 636, 658 (3d Cir. 2009) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)).  A custom has been characterized as a practice that, while not formally adopted as a municipal policy, is so pervasive that it carries with it "the force of law." Natale, 318 F.3d at 584 (quoting Bd. of County Commissioners of Bryan County, Okl. v. Brown, 520 U.S. 397, 404 (1997)).

Once a municipal policy or custom has been adequately identified, a plaintiff must then demonstrate that, "through its deliberate conduct, the municipality was the '*moving force*' behind the injury alleged." Berg v. County of Allegheny, 219 F.3d at 275 (emphasis added). "If . . . the

8

policy or custom does not facially violate federal law, causation can be established only by 'demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.'" Id. (quoting Bd. of County Commissioners of Bryan County, Okl. v. Brown, 520 U.S. 397, 407 (1997)).

Plaintiff does not identify a custom or policy of Defendant Allegheny County which could reasonably be construed to be the moving force behind the injury Plaintiff sustained to his ankle. Plaintiff merely avers that he had reason to believe his unidentified cellmate suffered from some unidentified form of mental illness, and had a predisposition towards violence. (ECF No. 1, ¶ 18). Plaintiff's Complaint does not provide the factual basis for these beliefs, or explain whether his beliefs predated that February 3, 2014 incident which led to him being injured. Plaintiff also does not aver that he, or anyone else, ever had a violent altercation with his cellmate prior to the February 3, 2014 incident. (See Id. at ¶¶ 17-37). Plaintiff does aver that he yelled out for help when his cellmate suddenly became aggressive and attacked him, however that does not suggest there existed an official ACJ policy or custom which led to his injury. (Id. at ¶¶ 18, 21).

Based on the foregoing, Plaintiff's Eighth Amendment failure-to-protect claim against Defendant Allegheny County should be dismissed.

> *(ii)* *Plaintiff does not allege that Defendant Orlando Harper had any personal involvement in the events surrounding Plaintiff's injury, and therefore Plaintiff cannot maintain an Eighth Amendment failure-to-protect claim against Defendant Orlando Harper.*

Under the Eighth Amendment, prison officials must provide inmates in their custody and control with a reasonable degree of safety from harm. Farmer v. Brennan, 511 U.S. 825, 844 (1994). For an Eighth Amendment failure-to-protect claim to be viable, a plaintiff must allege

9

facts demonstrating that "prison officials, acting with deliberate indifference, exposed [the plaintiff] to a sufficiently substantial 'risk of serious damage to his future health.'" Farmer v. Brennan, 511 U.S. 825, 843 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 35 (1993)). It is well settled that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, *even if the harm ultimately was not averted*." Farmer v. Brennan, 511 U.S. at 844 (emphasis added). As such, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id. at 845.

Additionally, a prison official's general duty to act reasonably in ensuring the safety of prisoners does not mean that an official's failure to protect a prisoner from an injury will result in an actionable constitutional claim against said official. In fact, the Third Circuit has held that an assault on one prisoner by another prisoner, without more, will not be sufficient to shield an Eighth Amendment failure-to-protect claim from a prison official's motion to dismiss or for summary judgment. See Paulino v. Burlington County Jail, 438 Fed. Appx. 106, 109 (3d Cir. 2011) (explaining that, although the inmate plaintiff was attacked and severely injured by members of the Blood street gang while incarnated at a county correctional facility, his "failure to put forth any evidence that the defendant prison officials were aware of any danger to him, let alone one posing a substantial risk of harm to him, [wa]s fatal to his failure to protect claim.").

Lastly, a supervisory official cannot be held liable for the actions, or inaction, of subordinate employees absent the existence of an identifiable policy which allegedly led to the plaintiff's injury. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."). The Third Circuit has established a

multi-part test that a plaintiff must satisfy in order to find a supervisory official liable for failing to properly supervise his or her subordinate employees:

> [T]he plaintiff must identify a *specific policy or practice* that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice . . . [Liability can be established by] showing that the supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff's, or (ii) showing that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and the failure of supervisory officials to respond will alone' support finding that the four-part test is met.

Beers-Capitol v. Whetzel, 256 F.3d 120, 134, 136-137 (3d Cir. 2001) (quoting Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.1989)) (emphasis added).

Plaintiff does not allege that Defendant Orlando Harper was personally involved in the February 3, 2014 incident which led to Plaintiff's ankle being injured. More specifically, Plaintiff does not allege that Defendant Orlando Harper was present at the time of the attack, nor does he allege that Defendant Orlando Harper should have been aware that Plaintiff's cellmate posed an unreasonable risk of harm to Plaintiff. (See ECF No. 1, ¶¶ 52-59). Plaintiff merely alleges that an unidentified ACJ correctional officer did not intervene quickly enough when Plaintiff's cellmate became aggressive and Plaintiff yelled out for assistance. (Id. at ¶¶ 55-57).

To the extent that Plaintiff is arguing that Defendant Orlando Harper should be held liable as a supervisory official, Plaintiff fails to allege a specific ACJ policy or practice which provided the moving force behind the injury to Plaintiff's ankle. (See Id. at ¶¶ 52-59). It is not clear from

the averments contained within the Complaint how Defendant Orlando Harper, in either his individual or professional capacity, acted unreasonably in ensuring the safety and wellbeing of Plaintiff, or how an existing ACJ policy or practice may have led to Plaintiff's injury.

Based on the foregoing, Plaintiff's Eighth Amendment failure-to-protect claim against Defendant Orlando Harper should be dismissed.

### D. CONCLUSION

WHEREFORE, it is respectfully requested that all claims against the County Defendants be dismissed.

## **CERTIFICATE OF SERVICE**

I, Lee Dellecker, Assistant County Solicitor, do hereby certify that a true and correct copy of this **BRIEF IN SUPPORT OF MOTION TO DISMISS** was served via electronic filing on the following:

**David M. Kobylinski, Esq.**
Praetorian Law Group
515 Court Place, Suite 4
Pittsburgh, PA 15219
(*Counsel for Plaintiff*)

**Louis J. Kroeck, IV, Esq.**
STE 1300 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219
(*Counsel for Plaintiff*)

**Kathryn M. Kenyon**
Meyer, Unkovic & Scott
535 Smithfield Street, Suite 1300
Pittsburgh, PA 15222
(*Counsel for Co-Defendants*)

/s/ *Lee Dellecker*_____
Lee Dellecker
Assistant County Solicitor
Pa. I.D. #314672

ALLEGHENY COUNTY LAW DEPARTMENT
300 Fort Pitt Commons Building
445 Fort Pitt Boulevard
Pittsburgh, PA 15219
(412) 350-1120

Date: April 22, 2016