IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TREMAINE EPPS,<br><br>    Plaintiff,<br><br>v.<br><br>ORLANDO HARPER, COUNTY OF ALLEGHENY, CORIZON HEALTH, INC., MICHAEL BARFIELD, and ADDITIONAL UNKNOWN DEFENDANTS,<br><br>    Defendants. | Civil Action No. 16-135<br>Chief Magistrate Judge Maureen P. Kelly |

# **OPINION**

**KELLY, Chief Magistrate Judge**

Plaintiff Tremaine Epps ("Plaintiff") brings this civil rights action against Defendants Orlando Harper ("Harper"), County of Allegheny ("the County"), and an unidentified corrections officer (collectively, "the County Defendants"), as well as Corizon Health, Inc. ("Corizon"), Michael Barfield ("Barfield"), and unidentified health care providers (collectively, "the Medical Defendants"). Plaintiff alleged that Defendants violated his rights provided by the Eighth Amendment to the United States Constitution while he was incarcerated in the Allegheny County Jail ("ACJ") by failing to protect him from a fellow inmate who had a known propensity for violence, and by failing to provide him with adequate medical care after he was assaulted by the inmate.[1]

Presently before the Court are two motions to dismiss: a Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim submitted on behalf of the Medical Defendants, and the

---
[1] Although it is unclear from the Complaint when Plaintiff was released from the ACJ, it appears that he is no longer incarcerated and was not at the time the Complaint was filed. ECF No. 1 ¶ 31.

County Defendants' Motion to Dismiss Plaintiff's Complaint. ECF Nos. 4 and 22, respectively. For the following reasons, both Motions will be granted.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

According to the Complaint, Plaintiff was incarcerated in the ACJ in February of 2014 and assigned to a cell with an inmate who suffers from mental illness and has a known propensity for violence. ECF 1 ¶¶ 17-18. On February 3, 2014, Plaintiff became aware that his cellmate was becoming aggressive and contacted the guards. Id. The guard on duty, however, ignored Plaintiff's request for help and Plaintiff was subsequently assaulted by his cellmate who "stomped" on Plaintiff's ankle. Id. ¶¶ 17, 20-21. When Plaintiff awoke the next morning he claims he was in severe pain and unable to walk. Id. ¶ 32. Plaintiff was taken to the prison infirmary where an x-ray of his left ankle was taken. Plaintiff claims that the x-ray showed that he had a fractured bone and that the infirmary placed his ankle in a splint and provided him with crutches and medicine. Id. ¶ 24. Despite having informed the staff at the infirmary that he continued to be in severe pain, his request to remain in the infirmary was denied and Plaintiff was returned to the general population holding cells. Id. ¶¶ 25-26. There, Plaintiff alleges that he not only continued to suffer severe pain but that he had difficulty climbing the stairs to his cell. Id. ¶ 27. Plaintiff's subsequent requests for additional medical treatment, however, went unheeded. Id. ¶¶ 27-28.

On February 19, 2014, Plaintiff's counsel apparently sent a letter to Defendant Harper, the Warden at the ACJ, stating that Plaintiff believed he had a broken leg and needed medical attention. Id. ¶ 28. Thereafter, on February 26, 2014, Plaintiff was treated at UPMC Mercy by Dr. Lisa Blackrick who performed surgery for a left distal fibula fracture. Id. ¶¶ 29, 32. Plaintiff alleges that, as a result of the ACJ and Corizon's refusal to provide adequate medical care, his

ankle had to be re-broken because the bone had begun to heal improperly. Id. ¶¶ 32-33. Plaintiff also contends that as a result of the delay in receiving proper medical care, the health of his left ankle is significantly and permanently impaired. Id. ¶¶ 34-35. Plaintiff also claims that because of Defendants' failure to provide him with mobility assistance and safe and appropriate housing, he suffered diminished access to prison programing and services as well as "further physical injury, mental anguish, anxiety and fear that he would be further injured." Id. ¶¶ 36-37.

Plaintiff filed the instant Complaint, ECF No. 1, on February 2, 2016, bringing claims pursuant to the Eighth Amendment to the United States Constitution against all Defendants for being deliberately indifferent to his medical needs (Count I); a claim for negligence against Corizon and the unidentified health care providers (Count II); a claim for negligence against Harper and Barfield (Count III); an Eighth Amendment claim for failure to protect against Defendants Harper, the County, and the unidentified corrections officer (Count IV); and a claim for negligence against Corizon (Count V).

The Medical Defendants filed a Motion to Dismiss for Failure to State a Claim on March 8, 2016, to which Plaintiff filed a Brief in Opposition on March 30, 2016. ECF Nos. 4, 17. The County Defendants filed a Motion to Dismiss Plaintiff's Complaint on April 22, 2016, and on May 15, 2016, Plaintiff filed Brief in Opposition. ECF Nos. 22, 25. The County Defendants filed a Reply to Plaintiff's Brief in Opposition on May 25, 2016. ECF No. 26. As such, both Motions are ripe for review.

## II. STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to

3

the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See Cal. Pub. Empl. Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

## III. DISCUSSION

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

4

42 U.S.C. § 1983.  "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws.  It does not, by its own terms, create substantive rights."  Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), citing Baker v. McCollan, 443 U.S. 137, 145 n. 3 (1979) (footnote omitted).  Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States."  Id.  As previously discussed, Plaintiff has alleged that Defendants violated his rights provided by the Eighth Amendment to the Constitution.

### A. Medical Defendants' Motion to Dismiss: Eighth Amendment Deliberate Indifference to Medical Needs (Count I)

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated and that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction proscribed by the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  Thus, in order to establish an Eighth Amendment violation, a plaintiff must demonstrate: (1) a serious medical need; and (2) that the defendants were deliberately indifferent to that need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

In order to establish deliberate indifference, a "plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious.  Additionally, a plaintiff must make a 'subjective' showing that defendant acted with a 'sufficiently culpable state of mind.'"  Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002), citing Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Deliberate indifference exists "where [a] prison official: (1) knows of a prisoner's need for medical

treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d at 197.

Inconsistencies or differences in medical diagnoses, short delays unaccompanied by arbitrary or unduly burdensome bureaucratic procedures, and the refusal to summon the medical specialist of the inmate's choice, perform tests or procedures that the inmate desires, or to explain to the inmate the reason for medical action or inaction, however, does not amount to cruel and unusual punishment. Maqbool v. Univ. Hosp. of Medicine & Dentistry of N.J., 2012 WL 2374689, at *9 (D.N.J. June 13, 2012). Nor do allegations of negligence or medical malpractice. See Spruill v. Gillis, 372 F.3d at 235 (neither claims of medical malpractice nor disagreements regarding the proper medical treatment are actionable). Rather, "a plaintiff must show that the defendants knew of and disregarded an excessive risk to his health . . . . '[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Wilson v. Burks, 423 F. App'x 169, 173 (3d Cir. 2011), *quoting* Farmer v. Brennan, 511 U.S. 825, 837 (1994). However, needless suffering resulting from a denial of simple medical care, which does not serve any penological purpose, is inconsistent with contemporary standards of decency and thus violates the Eighth Amendment. Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003).

Further, it is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007). Personal involvement in the alleged wrongdoing may be shown "through allegations of personal direction or of actual knowledge and

6

acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005), *quoting* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). See id. at 1207-08 ("[a]llegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity" such as stating time, place and persons responsible).

It is also well settled that a municipality may not be held liable under Section 1983 based on a theory of *respondeat superior* or merely because its employees may have acted unconstitutionally. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Rather, a municipality may only be found liable for their own illegal acts or where the plaintiff is able to identify a municipal "policy" or "custom" that caused the constitutional violation. Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997).

> Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. . . . Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

Id. at 403-04 (citations omitted). Liability based upon an unlawful custom will be found "where relevant policy makers within the municipal unit had notice or knowledge of a risk of deprivation of rights through a pattern of prior deprivations and acted with 'deliberate indifference' to the known risk." Bastile v. Elizabethtown Area Sch. Dist., 61 F. Supp. 2d 392, 405-06 (E.D. Pa. 1999), *citing* Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996). See Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. at 404 ("[t]he plaintiff must demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged") (emphasis in original).

Similarly, "[t]o establish liability regarding a private corporation, the plaintiff must show that the corporation, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiff's] constitutional harm.'" Winslow v. Prison Health Servs., Inc., 2010 WL 571766, at *5 (M.D. Pa. Feb. 12, 2010), *aff'd*, 2011WL 167280 (3d Cir. Jan. 20, 2011), *quoting* Miller v. City of Philadelphia, 1996 WL 683827, at *3-4 (E.D. Pa. Nov. 25, 1996). See Monell v. New York City Dep't of Soc. Servs., 436 U.S. at 694-95.

Here, the Medical Defendants argue that Plaintiff's claims brought against them pursuant to the Eighth Amendment in Count I should be dismissed because Plaintiff has failed to allege facts to suggest that they were deliberately indifferent to Plaintiff's medical needs. More specifically, Defendants argue that because Plaintiff acknowledges that he received medical treatment, he cannot set forth a viable Eighth Amendment claim.

With respect to Defendant Barfield, the Complaint is completely devoid of any facts from which it could be inferred that Barfield is liable for Plaintiff's injuries. Indeed, the only mention of Barfield in the Complaint appears at Count III where Plaintiff simply concludes that his "injuries, damages and failure to receive timely medical care were a direct and proximate result of the negligence of . . . Assistant Health Services Administrator Michal Barfield." ECF No. 1 ¶ 50. The absence of any facts to support Plaintiff's claim against Barfield requires that it be dismissed. Indeed, Plaintiff has not addressed the Medical Defendants' argument in this regard and thus has apparently conceded the issue.

The Complaint is similarly lacking with respect to Corizon itself. As previously discussed, to establish liability against Corizon, Plaintiff must identify a policy or custom pursuant to which Corizon was acting and demonstrate that the policy or custom caused his

injury. To that end, Plaintiff asserts that Corizon exhibited a pattern and practice of failing to implement policies and procedures ensuring that inmates receive proper medical care as evidenced by a report issued by the Allegheny County Controller's Office regarding Corizon's compliance with the contract it entered into with Allegheny County relative to inmate health care ("the Report").[2] In particular, Plaintiff cites to the portions of the Report in which it was found that Corizon had failed to comply with reporting requirements; failed to maintain required staffing levels; failed maintain accurate and complete medical records; failed to provide required clinical care; failed to use an appropriate process to prioritize inmate sick calls; and failed to respond to inmate medical requests in a timely manner. ECF No. 1 ¶¶ 14-16.

Even assuming that these deficiencies could be considered a custom or policy, Plaintiff has failed to allege any facts to suggest that they related to or caused Plaintiff's injury. Corizon's failure to comply with reporting requirements and maintain accurate medical records are irrelevant to Plaintiff's injury, as is the failure to maintain staffing levels particularly given Plaintiff's acknowledgement that he was, in fact, seen and treated by the medical staff. Similarly, Corizon's failure to implement a process to prioritize inmate sick calls and respond to medical requests in a timely manner has no bearing on Plaintiff's injury as he has not alleged in the Complaint that he submitted a sick call request. Although it appears at first blush that a failure to provide inmates with "required clinical care" could be relevant to Plaintiff's injury, the Report in this regard speaks largely to Corizon's failure to complete physical exams within fourteen days of admission to the ACJ and failure to distribute prescribed medications or provide

---

[2] In deciding a motion to dismiss, "[i]n addition to the allegations contained in the pleadings, the Court may also review "matters of public record, exhibits attached to the complaint and items appearing in the record of the case," as well as "undisputably authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Ickes v. Flanagan, 2008 WL 859183, at *1 (W.D. Pa. Mar. 31, 2008), quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d at 1384-85 n.2, and Steinhardt Group Inc. v. Citicorp, 126 F.3d 144, 145 (3d Cir. 1997). Because Plaintiff's claims are based in part on the findings in the Report, the Court may consider it without converting the Motion to Dismiss to one for summary judgment.

the clinical services that had been prescribed, neither of which are at issue here.  See ECF No. 17-1 at 26-28.  Thus, although it appears clear that Corizon has had problems, Plaintiff has failed to allege in the Complaint how they have any relation to nor caused Plaintiff's injury.  Plaintiff therefore has failed to state an Eighth Amendment claim against the Medical Defendants and Count I as to them will be dismissed.[3]

### B.   County Defendants' Motion to Dismiss

#### 1.   Eighth Amendment Deliberate Indifference to Medical Needs (Count I)

As noted above, Plaintiff has also named the County Defendants in Count I of the Complaint alleging that they were deliberately indifferent to his medical needs in violation of his rights provided by the Eighth Amendment to the Constitution.  The County Defendants have moved to dismiss Count I as to them arguing that because Plaintiff received medical care the day after he was assaulted by his cellmate and was taken to an outside specialist three weeks later, he is unable to state a claim against them.

Indeed, the United States Court of Appeals for the Third Circuit has held that "[a]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [ ] will not be chargeable with the Eighth Amendment *scienter* requirement of deliberate indifference."  Spruill v. Gillis, 372 F.3d at 236.  Moreover, "[i]n order to charge a non-medical prison official with the Eighth Amendment *scienter* requirement of deliberate indifference, a plaintiff 'bears the burden of proving . . . facts supporting the defendants' mental state.'"  Huskins v. Beard, 2004 WL 2223307, at *6 (E.D. Pa. Oct. 1, 2004), *citing* Spruill v. Gillis, 372 F.3d at 236.  The Court of Appeals for the Third Circuit has also held that prison officials who are not physicians cannot be considered

---

[3] Having found that Plaintiff's Eighth Amendment claims against the Medical Defendants are properly dismissed, the Court need not address the Medical Defendants' argument relative to punitive damages.

deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993). See United States ex rel. Walker v. Fayette Cty., 599 F.2d 573, 575 n.2 (3d Cir. 1979), *quoting* Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law").

Here, Plaintiff has not alleged any facts from which it could be inferred that Defendant Harper, or any other prison employee, had any reason to believe that the prison doctors and/or medical staff were not providing Plaintiff with appropriate treatment. Rather, Plaintiff has merely alleged that he "informed several guards" that he required additional treatment and that "all requests" for additional treatment were denied. ECF No. 1 ¶¶ 27-29. These statements fall woefully short of establishing the requisite scienter element of a deliberate indifference claim against the non-medical County Defendants. See Durmer v. O'Carroll, 991 F.2d at 69 (affirming the dismissal of an inmate's Eighth Amendment medical claim against the warden of Mid–State Correctional Facility despite the prisoner's uncontroverted averments that he had sent the warden multiple letters requesting additional medical assistance over a three month period of time). Indeed, Plaintiff pleads no facts relative to Harper's personal involvement in his medical care or any knowledge of his request for additional medical attention other than the fact that Plaintiff's lawyer sent Harper a letter on February 19, 2014. Id. ¶ 28. Assuming that Harper actually received the letter and did so within several days, Plaintiff acknowledges that he was sent to an outside specialist within a week. Id. ¶ 32.

Nevertheless, citing to a single Report and Recommendation issued in Prince v. Corizon Health, Inc., 2:15-cv-1202 (Eddy, M.J.), Plaintiff suggests that this Court has "consistently" permitted claims of deliberate indifference to go forward based on the criticisms of Corizon contained in the Report. Id. ECF No. 25. Prince, however, is readily distinguishable from the instant case.

In Prince, the plaintiff, an inmate at the ACJ, sustained injuries to his leg after an apparent fall. Plaintiff received an x-ray the next day which showed that the his leg was broken. Plaintiff was informed at the time that he would need surgery at an outside facility to have it repaired. The transfer, however, did not take place for three weeks during which time the plaintiff fell a second time exacerbating the original injury and dislocating his ankle. It also appears that the plaintiff filed at least three grievances during the three weeks requesting transport to an outside hospital for surgery as had been ordered. The grievances, however, went unheeded by the non-medical personnel who reviewed them.

In the instant case, however, unlike in Prince, Plaintiff has not alleged that surgery was prescribed by the medical staff at the outset (or even that surgery was necessary to repair his broken ankle), or that the directive to transport him to an outside facility for surgery was ignored.[4]

Moreover, Plaintiff makes no allegation in the instant Complaint that he filed a grievance regarding his perceived need for additional medical care or otherwise told anyone except unidentified "guards" that he needed additional care. ECF No. 1 ¶¶ 27, 30. Once it was made known through Plaintiff's counsel that Plaintiff might need additional care he was transported to UPMC Mercy within five days -- not three weeks. Under these circumstances, the Court cannot

---

[4] As previously discussed, the *prescribed*, but un-provided, clinical care at issue in Prince, is the kind of clinical care for which Corizon was faulted for failing to provide in the portion of the Report cited by Plaintiff. ECF No. 71-1 at 26-28.

12

find that Prince is instructive or that Plaintiff has otherwise pled sufficient facts to sustain a claim of deliberate indifference against the County Defendants. Accordingly, Plaintiff has failed to state Eighth Amendment deliberate indifference claims against the County Defendants and Count I as to them will be dismissed.

### 2. Eighth Amendment Failure to Protect (Count IV)

Plaintiff also alleges that the County Defendants violated his rights provided by the Eighth Amendment by failing to protect him from his cellmate.

As previously discussed, it is well established that a municipality may not be held liable under Section 1983 based on a theory of *respondeat superior* or merely because its employees may have acted unconstitutionally but rather, may only be found liable for their own illegal acts or where the plaintiff is able to identify a municipal "policy" or "custom" that caused the constitutional violation. Monell v. New York City Dep't of Soc. Servs., 436 U.S. at 691; Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. at 403.

It is also well established that included within the Eighth Amendment's ambit is a duty upon individual prison officials to "protect prisoners from violence at the hands of other prisoners," and that the prison official's conduct is measured against the well-known standard of "deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 833 (1994). See Jones v. Day, 2007 WL 30195, at *3 (W.D. Pa. Jan. 4, 2007). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer v. Brennan, 511 U.S. at 835. Thus, in order to succeed on a failure to protect claim under the Eighth Amendment, a prisoner must show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists;" (3) the defendant actually drew this inference; and (4) the defendant deliberately disregarded the apparent risk. Id. at 834-37. See Jones v. Day, 2007 WL 30195, at *3 ("[i]t is not an objective test for deliberate indifference; rather, the court must look to what the prison official actually knew, rather than what a reasonable official in his position should have known"). See also Jones v. Beard, 145 F. App'x 743, 745 (3d Cir. 2005); Schaeffer v. Wilson, 2007 WL 589023, at *3-4 (W.D. Pa. Feb. 20, 2007).

In this case, the County Defendants argue that Plaintiffs' failure to protect claim should be dismissed against the County because Plaintiff has failed to identify a policy or custom employed by the County that caused Plaintiff's injury or that would provide the basis for finding the County liable for failing to protect Plaintiff from his cellmate. Plaintiff has not directly addressed the County Defendants' argument in this regard but rather, for reasons that are not entirely clear, has reiterated his arguments that Defendants have engaged in a pattern and practice -- not of failing to protect Plaintiff from harm by his cellmate -- but of failing to provide inmates with medical care. ECF No. 25 at 7-8. Plaintiff's failure to protect claim, however, revolves around the County Defendants' failure to intervene when Plaintiff alerted the guard on duty that his cellmate was becoming aggressive and not his subsequent medical care. ECF 1 ¶¶ 52-59. Plaintiff's failure to identify a policy or custom relative to his failure to protect claim is fatal to his claim against the County.

Similarly, with respect to Defendant Harper, Plaintiff merely reiterates its arguments regarding Corizon's deficiencies in administering health care to inmates at the ACJ as set forth in the Report. Neither Corizon's failures nor Harper's alleged participation in formulating Corizon's and the ACJ's policies and practices regarding inmate health care, however, have any

14

bearing on any pattern or practice relative to protecting inmates from violence at the hands of other prisoners.

Moreover, Plaintiff has failed to set forth any facts in the Complaint from which it could be inferred that Harper had any personal knowledge that Plaintiff's cellmate had a propensity for violence or that Harper was otherwise aware of facts from which the inference could be drawn that a substantial risk of harm to Plaintiff existed, that Harper actually drew the inference and deliberately ignored it. Plaintiff therefore has failed to state a claim against Harper as well and Plaintiff's failure to protect claim at Count IV of the Complaint is properly dismissed against the County Defendants.

### C. State Law Negligence Claims (Counts II, III and V)

Having found that all of the federal claims brought by Plaintiff are properly dismissed, the only remaining claims are state law claims of negligence brought against Defendant Corizon at Counts II and V of the Complaint and against Defendant Harper at Count III. Where all claims over which the Court has original jurisdiction have been dismissed, however, the district court may decline to exercise supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367(c)(3). Although declining to exercise jurisdiction is within the discretion of the district court, the Court of Appeals for the Third Circuit has held that, absent extraordinary circumstances, "pendent jurisdiction should be declined where the federal claims are no longer viable." Shaffer v. Bd. of Sch. Dir. Albert Gallatin Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984) (citations omitted). See Noble v. Gaston, 2009 WL 198252, at *5 (W.D. Pa. Jan. 27, 2009).

Here, there does not appear to be any extraordinary circumstances surrounding this case which would warrant the exercise of supplemental jurisdiction over Plaintiff's state law claims and thus the Court declines to do so.

## IV. CONCLUSION

For the foregoing reasons, the Medical Defendants' Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim, ECF No. 4, and the County Defendants' Motion to Dismiss Plaintiff's Complaint, ECF No. 22, are properly granted and Plaintiff's Complaint is properly dismissed in its entirety. The United States Court of Appeals for the Third Circuit, however, has held that when dismissing a civil rights case for failure to state a claim, a court must give the plaintiff an opportunity to amend the complaint whether or not the plaintiff has asked to do so unless to allow an amended complaint would be inequitable or futile. See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007), *citing* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Here, it is not entirely clear to the Court that allowing Plaintiff to file an Amended Complaint as to Count I would be inequitable or futile.

Accordingly, the following Order is entered:

## ORDER

AND NOW, this 24th day of October, 2016, upon consideration of the Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim submitted on behalf of the Medical Defendants, ECF No. 4, and the County Defendants' Motion to Dismiss Plaintiff's Complaint, ECF No. 22, IT IS HEREBY ORDERED that the Medical Defendants' Motion is GRANTED, and the County Defendants' Motion is also GRANTED. IT IS FURTHER ORDERED that, to the extent that

Plaintiff believes he can cure the substantial pleading deficiencies identified in the Opinion as to Count I, he may file an Amended Complaint solely as to Count I by November 7, 2016.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM/ECF