IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TREMAINE EPPS, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 16-135 |
| | ) Chief Magistrate Judge Maureen P. Kelly |
| v. | ) |
| | ) |
| ORLANDO HARPER, COUNTY OF | ) |
| ALLEGHENY, CORIZON HEALTH, INC., | ) |
| MICHAEL BARFIELD, and ADDITIONAL | ) |
| UNKNOWN DEFENDANTS, | ) Re: ECF Nos. 30 and 33 |
| | ) |
| Defendants. | ) |

## **OPINION**

**KELLY, Chief Magistrate Judge**

Plaintiff Tremaine Epps ("Plaintiff") brings this civil rights action against Defendants Orlando Harper ("Harper"), County of Allegheny ("the County"), and an unidentified corrections officer (collectively, "the County Defendants"), as well as Corizon Health, Inc. ("Corizon"), Michael Barfield ("Barfield"), and unidentified health care providers (collectively, "the Medical Defendants"). Plaintiff alleges that Defendants violated his rights provided by the Eighth Amendment to the United States Constitution while he was incarcerated in the Allegheny County Jail ("ACJ") by failing to provide him with adequate medical care after he was assaulted by another inmate.[1]

Presently before the Court are two motions to dismiss: a Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim or, in the Alternative, Motion for Summary Judgment, submitted on behalf of the Medical Defendants, and the County Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. ECF Nos. 30 and 33, respectively. For the following reasons both Motions will be granted.

---
[1] Plaintiff was apparently released from the ACJ prior to filing the instant suit. ECF Nos. 1 ¶ 31; ECF No. 29 ¶ 34.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

According to the First Amended Complaint ("FAC"), Plaintiff was incarcerated in the ACJ in February of 2014 and assigned to a cell with an inmate who suffers from mental illness and has a known propensity for violence. ECF 29 ¶¶ 17-18. On February 3, 2014, Plaintiff became aware that his cellmate was becoming aggressive and contacted the guards. Id. The guard on duty, however, ignored Plaintiff's request for help and Plaintiff was subsequently assaulted by his cellmate who "stomped" on Plaintiff's ankle. Id. ¶¶ 17, 20-21. When Plaintiff awoke the next morning, he claims that he was in severe pain and unable to walk. Id. ¶ 23. Consequently, Plaintiff was taken to the prison infirmary where an x-ray of his left ankle was taken. Id. ¶ 24. According to the Progress Note in Plaintiff's medical records dated February 4, 2014, which Plaintiff has attached to the FAC, the x-ray showed that he had a fractured bone and an "ortho referral" was noted. Plaintiff's ankle was placed in a splint and he was provided with crutches and medicine. Id. ¶¶ 24, 27. See ECF No. 29-1. Despite having informed the staff at the infirmary that he continued to be in severe pain, his request to remain in the infirmary was denied and Plaintiff was returned to the general population holding cells. Id. ¶¶ 25-26. There, Plaintiff alleges that he not only continued to suffer severe pain but had difficulty climbing the stairs to his cell. Id. ¶ 29. Plaintiff's subsequent requests for additional medical treatment, however, went unheeded and he was not referred to an orthopedic surgeon. Id. ¶¶ 28-31.

On February 19, 2014, Plaintiff's counsel apparently sent a letter to Defendant Harper, the Warden at the ACJ, stating that Plaintiff believed he had a broken leg and needed medical attention. Id. ¶ 30. Thereafter, on February 26, 2014, Plaintiff was treated at UPMC Mercy by Dr. Lisa Blackrick who performed surgery for a left distal fibula fracture. Id. ¶¶ 31, 32, 35. Plaintiff alleges that, as a result of the ACJ and Corizon's refusal to provide adequate medical

2

care, his ankle had to be re-broken because the bone had begun to heal improperly. Id. ¶¶ 35, 36. Plaintiff also contends that as a result of the delay in receiving proper medical care, the health of his left ankle is significantly and permanently impaired. Id. ¶ 37. Plaintiff also claims that because of the ACJ's failure to provide him with mobility assistance and safe and appropriate housing, he suffered diminished access to prison programming and services as well as "further physical injury, mental anguish, anxiety and fear that he would be further injured." Id. ¶¶ 39, 40.

Plaintiff filed a Complaint on February 2, 2016, bringing claims pursuant to the Eighth Amendment to the United States Constitution against all Defendants for being deliberately indifferent to his medical needs (Count I); a claim for negligence against Corizon and the unidentified health care providers (Count II); a claim for negligence against Harper and Barfield (Count III); an Eighth Amendment claim for failure to protect against Defendants Harper, the County, and the unidentified corrections officer (Count IV); and a claim for negligence against Corizon (Count V).

The Medical Defendants and the County Defendants both filed Motions to Dismiss the Complaint. ECF Nos. 4, 17. In an Opinion and Order dated October 24, 2017, the Court granted both Motions finding that Plaintiff had failed to state Eighth Amendment claims for deliberate indifference and/or failure to protect and declining to exercise supplemental jurisdiction over Plaintiff's state law claims for negligence. ECF No. 28. Plaintiff, however, was granted leave to file an Amended Complaint to the extent he could cure the deficiencies identified by the Court as to his deliberate indifference claim brought at Count I. Id.

Accordingly, Plaintiff filed the FAC on November 7, 2016, reasserting his Eighth Amendment claim against all Defendants for being deliberately indifferent to his medical needs (Count I); his claim for negligence against Corizon and the unidentified health care providers

3

(Count II), his negligence claim Harper and Barfield (Count III); and his claim for negligence against Corizon (Count V).[2] The Medical Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim or, in the Alternative, Motion for Summary Judgment on November 14, 2016 and the County Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint on November 21, 2016. ECF Nos. 30, 33. Plaintiff filed Responses in Opposition to the Motions on December 8, 2016 and December 14, 2016, respectively. ECF Nos. 38, 39. A Reply by the County Defendants has also been filed. ECF No. 41. As such, both Motions are ripe for review.

## II. STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See Cal. Pub. Empl. Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the

---

[2] Plaintiff has abandoned his Eighth Amendment failure to protect claim brought at Count IV of the original Complaint.

4

court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

### III. DISCUSSION

#### A. Eighth Amendment Deliberate Indifference Claims (Count I)

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), citing Baker v. McCollan, 443 U.S. 137, 145 n. 3 (1979) (footnote omitted). Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id. As previously discussed, Plaintiff has alleged that Defendants violated his rights provided by the Eighth Amendment to the Constitution.

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated and that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). Thus, in order to establish an Eighth Amendment violation, a plaintiff must demonstrate: (1) a serious medical need; and (2) that the defendants were deliberately indifferent to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

In order to establish deliberate indifference, a "plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, a plaintiff must make a 'subjective' showing that defendant acted with a 'sufficiently culpable state of mind.'" Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002), *citing* Wilson v. Seiter, 501 U.S. 294, 298 (1991). Deliberate indifference exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d at 197. See Wilson v. Burks, 423 F. App'x 169, 173 (3d Cir. 2011), *quoting* Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("a plaintiff must show that the defendants knew of and disregarded an excessive risk to his health . . . . '[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference'").

Here, both the Medical Defendants and the County Defendants argue that Plaintiff's Eighth Amendment claims brought at Count I should be dismissed because Plaintiff has failed to

cure the deficiencies found in the original Complaint with respect to his allegations of deliberate indifference and that, based on Plaintiff's medical records, portions of which Plaintiff has attached to the FAC and the Medical Defendants have attached as an exhibit to their Motion to Dismiss, he cannot allege facts to support a finding that Defendants were deliberately indifferent to his medical needs.[3]  The Court agrees.

According to the FAC, as well as Plaintiff's relevant medical records, Plaintiff sustained the injury to his ankle on February 3, 2014.  Having awoken the next day in severe pain and unable to walk, Plaintiff was taken to the prison infirmary where an x-ray of his left ankle was taken.  ECF No. 29 ¶¶ 23, 24.  According to the Progress Note in Plaintiff's medical records dated February 4, 2014, the x-ray showed that he had a fractured bone and an "ortho referral" was noted.  The Progress Note also reflects that an Ortho glass splint was applied and that Plaintiff was provided with crutches.  In addition, contrary to Plaintiff's assertion that he was prescribed nothing more than Advil, see ECF No. 38 at 10, the Progress Note shows that Plaintiff was also prescribed the narcotic Norco for pain.[4]  ECF No. 29 ¶¶ 24, 27.  See ECF No. 29-1; ECF No. 31-2 at 2, 3.  Plaintiff was also asked to remain non-weight bearing.  ECF No. 31-3 at

---

[3] "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Brown v. Daniels, 128 F. App'x 910, 913 (3d Cir. 2005), quoting Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004).  "[A] document forms the basis of a claim if it is 'integral to or explicitly relied upon in the complaint.'" Id. quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted).  The Court may also review "undisputably authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Ickes v. Flanagan, No. 07-143J, 2008 WL 859183, at *1 (W.D. Pa. Mar. 31, 2008), quoting Steinhardt Group v. Citicorp, 126 F.3d 144, 145 (3d Cir. 1997).  Here, not only does Plaintiff refer to and rely on his medical records to support his claim of deliberate indifference, but he has attached a portion of his medical records to the FAC.  The Medical Defendants have merely completed the picture.  Having placed his medical records before the Court, they are properly considered without converting the instant Motions to ones for summary judgment.  See Goodwin v. Elkins & Co., 730 F.2d 99, 113 (3d Cir. 1984) ("[a] contrary holding would enable plaintiffs to survive a 12(b)(6) motion where the terms of the document on which the claim is based would render the complaint insufficient as a matter of law, simply by refusing to attach the document to the complaint") (Becker, J., concurring).

[4] The Court takes judicial notice of the fact that Norco is the brand name for a pain reliever that is a combination of the narcotic hydrocodone and acetaminophen, the latter of which increases the effects of the hydrocodone.  See https://www.drugs.com/norco.html.

7

12. The record further shows, contrary to Plaintiff's assertion that he "was not referred to an orthopedic surgeon," ECF No. 29 ¶ 28, that a Consultation Request to see an outside orthopedic surgeon was made that same date and marked "urgent." ECF No. 31-3 at 2. It also appears that on February 5, 2014, the Consultation Request was approved by Corizon as requested. Id. at 3. Although it is unclear precisely when the appointment was made, it was clearly made sometime prior to February 19, 2014, when an Inmate Offsite Transportation form was executed for Plaintiff to be transported to Mercy Hospital on February 24, 2014, for the consultation. Id. at 11.

Plaintiff's medical records also reflect, contrary to Plaintiff's assertion that his requests for additional care went unheeded, that, in the interim, he had a follow-up medical appointment at the ACJ on February 10, 2014, and again on February 14, 2014. The Progress Note from February 10, 2014, shows that Plaintiff's Ace bandage was changed and that he was prescribed Motrin in addition to the Norco. Id. at 6, 8. It was also noted that the "orthopedic surgeon consultation in progress (waiting for approval)." Id. at 6. Similarly, on February 14, 2014, Plaintiff was re-splinted and his medications for pain were reordered. Id. at 7, 9.

Plaintiff's medical records also reflect that he was, in fact, seen by Dr. Lisa R. Blackrick, MD, on February 24, 2014, for a consultation. Dr. Blackrick indicated in her report that Plaintiff was in no acute distress and had no numbness or tingling. Id. at 12. Dr. Blackrick noted that although Plaintiff complained of pain and discomfort, he was still using Norco. Dr. Blackrick also reported that x-rays revealed a moderately displaced left distal fibula fracture that was amenable to nonsurgical treatment. Id. Plaintiff, however, opted to have surgery which took place on February 26, 2014. Id. at 12. ECF No. 29 ¶ 35. The pre-operative tests

recommended by Dr. Blackrick were performed by Corizon the day before, on February 25, 2014. ECF No. 31-3 at 10, 14-21.

Under these circumstances, the Court is hard-pressed to find any indicia of deliberate indifference to Plaintiff's medical needs by any of the Defendants. Upon waking up in pain and unable to walk the day after the incident -- February 4, 2014 -- Plaintiff was immediately seen in the infirmary where an x-ray was taken, pain medication dispensed, a split applied, crutches provided and a referral to an outside orthopedic surgeon was ordered marked "urgent." Less than three weeks later, on February 24, 2014, Plaintiff was, in fact, seen by an orthopedic surgeon. In the interim, Plaintiff was seen twice by the medical staff at the ACJ, at which time, his bandages and/or splint was changed, the prescription for Norco was continued, and a prescription for Motrin was added.[5] Moreover, the FAC devoid of any suggestion that the twenty day time frame it took to actually see Dr. Blackrick was an intentional delay. To the contrary, the record shows that the referral was in fact "in process" during that time. ECF No. 31-3 at 6, 11. These facts do not state a plausible claim for deliberate indifference.

Indeed, under almost identical circumstances, the United States District Court for the District of New Jersey found that the defendant's actions simply "cannot be described as a wrong impinging on Plaintiff's constitutional rights." Fontanez v. Lopez, No. 11-2573, 2011 WL 2745809, at *6 (D.N.J. July 12, 2011). In so finding, the court noted that:

> (a) Plaintiff's injury was an internal bone fracture, which did not cause Plaintiff any danger of infection, external bleeding, etc.; (b) Plaintiff was in a prison environment, where immediate consultation by a medical specialist is unavailable unless the inmate is transported to a hospital; (c) Plaintiff's arm was provided with a temporary protective treatment, *i.e.,* the cast; and (d) Plaintiff was scheduled to be seen by an orthopedic surgeon in just two weeks, such scheduling of Plaintiff's examination by the surgeon could not amount to an act of deliberate indifference. Indeed, no statement made in

---
[5] The Court also notes here that, although Plaintiff "elected" to proceed with surgery, it is clear from Dr. Blackrick's report that nonsurgical treatment was an option for Plaintiff's injury. ECF No. 31-3 at 12.

9

> the Complaint suggests that [the defendant] sought to unduly delay such
> examination or that [the defendant] created any undue bureaucratic
> obstacles to prevent Plaintiff from being seen by the surgeon sooner. All
> that Plaintiff's Complaint suggests is that Plaintiff was unhappy with having
> to wait for his orthopedic surgeon appointment until July 31, 2009;
> however, such disappointment cannot transform Plaintiff's challenges into a
> claim of constitutional magnitude.

Id. Moreover, although Fontanez was scheduled to see an orthopedic surgeon on July 31, 2009, the appointment was postponed and he was not actually evaluated by an orthopedic surgeon until August 27, 2009, which was over seven weeks after x-rays showed his arm was fractured and it was determined that he needed to be seen by an orthopedic surgeon. Id. at *2, *6 n.7.

In this case, like in Fontanez, Plaintiff's apparent dissatisfaction with having to wait twenty days before he was seen by an orthopedic surgeon does not transform Plaintiff's claim into one of constitutional magnitude where there was clearly no deliberate indifference to his medical needs. Plaintiff has not alleged any facts to suggest that any of the Defendants refused to provide him with medical treatment, intentionally delayed treatment, created any undue obstacles to receiving treatment, or prevented him from receiving recommended treatment. Id. See Hemphill v. Ocean City Dep't of Corr., No. 05-1950, 2006 WL 2470608, at *7 (D.N.J. Aug. 24, 2006) (failure to establish that prison officials refused to provide treatment, that medical treatment was delayed for a non-medical reason, or that they prevented the plaintiff from receiving treatment was fatal to claim for deliberate indifference). See also Williams v. Corizon, No. 12-2412, 2013 WL 4787223, at *13 (E.D. Pa. Sept. 9, 2013) (finding that the facts did not support a claim of deliberate indifference where the plaintiff not only received immediate medical attention following his injury but had a consultation with an orthopedist and surgery within three weeks). Nor has Plaintiff alleged any facts to support a finding that a substantial risk of harm existed, that any of the Defendants were aware of those facts or that Defendants had any

10

disregard for a risk to Plaintiff's health, much less an excessive risk.[6] Plaintiff's Eighth Amendment deliberate indifference claims therefore are properly dismissed.

B.     **State Law Negligence Claims (Counts II, III and V)**

Having found that all of the federal claims brought by Plaintiff are properly dismissed, the only remaining claims are state law claims of negligence brought against Defendant Corizon at Counts II and V of the Complaint and against Defendant Harper at Count III. Where all claims over which the Court has original jurisdiction have been dismissed, however, the district court may decline to exercise supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367(c)(3). Although declining to exercise jurisdiction is within the discretion of the district court, the Court of Appeals for the Third Circuit has held that, absent extraordinary circumstances, "pendent jurisdiction should be declined where the federal claims are no longer viable." Shaffer v. Bd. of Sch. Dir. Albert Gallatin Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984) (citations omitted). See Noble v. Gaston, No. 08-348, 2009 WL 198252, at *5 (W.D. Pa. Jan. 27, 2009).

Here, there does not appear to be any extraordinary circumstances surrounding this case which would warrant the exercise of supplemental jurisdiction over Plaintiff's state law claims and thus the Court declines to do so.

C.     **Plaintiff's Request for Leave to Amend**

Alternatively, Plaintiff asks for leave to amend the Complaint a second time so that he may include facts regarding the findings at "quality assurance meetings" apparently held by

---

[6] To the extent that Plaintiff relies on the December 15, 2014 Report issued by the Allegheny County Controller's Office as evidencing the scienter requirement of a deliberate indifference claim, Plaintiff's reliance is misplaced. ECF No. 17-1; ECF No. 29 ¶¶ 13-16. As found by this Court relative to the previously filed Motions to Dismiss, the Report revolves around Corizon's failure to comply with reporting requirements; failure to maintain required staffing levels; failure maintain accurate and complete medical records; failure to provide required clinical care; failure to use an appropriate process to prioritize inmate sick calls; and failure to respond to inmate medical requests in a timely manner -- none of which are relevant to Plaintiff's injury or the care he received. ECF No. 28 at 9-10.

11

Corizon which are reported to the Allegheny County Jail Oversight Board. ECF No. 39 at 7. Because "Defendant Harper Plaintiff reports to the Board as part of his job responsibilities," Plaintiff contends that the reports "can serve to establish the requisite knowledge needed for the County defendants . . . ." Id.

The United States Court of Appeals for the Third Circuit has held that when dismissing a civil rights case for failure to state a claim, a court must give the plaintiff an opportunity to amend the complaint, the court need not do so where allowing the plaintiff to amend would be inequitable or futile. See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007), citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

Having found that Plaintiff is unable to state a claim of deliberate indifference with respect to his medical needs as to any of the Defendants, the issues relative to Defendants' knowledge and/or personal involvement are moot. Providing Plaintiff with the opportunity to amend the Complaint a second time would therefore be futile and Plaintiff's request for permission to do so is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that both the Motion to Dismiss submitted on behalf of the Medical Defendants and the County Defendants' Motion to Dismiss are properly granted and that Plaintiff's Complaint is properly dismissed in its entirety.

Accordingly, the following Order is entered:

**ORDER**

AND NOW, this 13th day of April, 2017, upon consideration of the Medical Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim or, in the Alternative, Motion for Summary Judgment, ECF No. 30, the County Defendants' Motion to

Dismiss Plaintiff's First Amended Complaint, ECF No. 33, and the Responses thereto filed by Plaintiff , IT IS HEREBY ORDERED that the Medical Defendants' Motion is GRANTED, and the County Defendants' Motion is also GRANTED; IT IS FURTHER ORDERED that the Clerk is to mark the case closed.

                              BY THE COURT:

                              /s/ Maureen P. Kelly
                              MAUREEN P. KELLY
                              CHIEF UNITED STATES MAGISTRATE JUDGE

cc:    All counsel of record via CM/ECF